UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NIESHA MCKNIGHT and JONATHAN SPRAUS,

Plaintiffs,

-against-

THE CITY OF NEW YORK and NYPD POLICE OFFICERS JOHN DOES NOS. 1, 2, 3, ETC., whose identities are unknown but who are known to be personnel of the New York City Police Department, all of whom are sued individually and in their official capacities,

Defendants.

---

26CV2314

**COMPLAINT**

**Jury Trial Demanded**

Plaintiffs, NIESHA MCKNIGHT and JONATHAN SPRAUS, by their counsel, hereby allege as follows, upon knowledge as to themselves and their acts, and as to all other matters upon information and belief:

1. Plaintiffs bring this action to recover compensatory and punitive damages, attorneys' fees and costs, pursuant to 42 U.S.C. § 1983 for violations of their civil rights under the United States Constitution and New York State law caused by the conduct of defendant police officers and the City of New York.

## PARTIES AND RELATED ENTITIES

2. Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. The CITY OF NEW YORK is authorized by law to maintain the New York City Police Department ("NYPD"), which acts as the City's agent in the area of law enforcement and for which it is ultimately responsible. The CITY OF NEW YORK assumes the risks incidental to the maintenance of the NYPD, and the employment of its police officers.

Additionally, the CITY OF NEW YORK was at all times relevant herein the public employer of defendant police officers.

3. Defendant police officers were employed by the NYPD and acted under color of state law in the course and scope of their duties and functions as agents, employees and officers of the CITY OF NEW YORK. The identity and number of police officers are still unknown. Those who are unknown at this time are being sued as John Does until their names can be determined. All of the police officers sued herein are alleged to have acted in both their official and individual capacities.

4. Plaintiff Niesha McKnight is an adult female resident of Queens County, New York.

5. Plaintiff Jonathan Spraus is an adult male resident of Kings County, New York.

**JURISDICTION AND VENUE**

6. Jurisdiction in this Court is established pursuant to 28 U.S.C. §§ 1331 and 1343.

7. Plaintiffs also invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide their claims brought under New York State law.

8. A notice of claim of Plaintiffs' intent to sue was timely filed with the City of New York: for Ms. McKnight on February 11, 2025, and for Mr. Spraus on February 24, 2025. The City thereafter conducted examinations of Plaintiff McKnight pursuant to General Municipal Law § 50-h on April 23, 2025 and of Plaintiff Spraus pursuant to General Municipal Law § 50-h on April 29, 2025.

9. To date, the City of New York has not made an offer to settle Plaintiffs' claims.

10. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b) and (c) because the incident giving rise to the claims took place in Queens County.

11. Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

12. On or about January 17, 2025, at approximately 7:00 p.m., Plaintiff Niesha McKnight was inside her residence located at 129-15 135th Avenue, front apartment, in South Ozone Park, Queens, with Plaintiff Jonathan Spraus and Ms. McKnight's eight-year-old son.

13. Ms. McKnight rented and occupied the front first-floor duplex unit at that address. Her apartment was accessed through the main front entrance to the house and was distinct from other apartments located elsewhere on the premises, including a rear first-floor apartment, a basement apartment, and a shed or rear dwelling unit.

14. Upon information and belief, defendant police officers were executing or attempting to execute a search warrant in connection with a person who did not reside in Plaintiffs' apartment.

15. Plaintiffs became aware of police presence when they heard a commotion outside and observed numerous NYPD officers entering the property, including officers moving toward the back of the house and using a battering ram or similar device on a basement or rear door while yelling "police" and "search warrant."

16. Shortly thereafter, defendant police officers rushed to Plaintiffs' front door, banged on it, and threatened to knock it down if it was not opened.

17. Plaintiffs opened the door in order to avoid the police breaking it down in the presence of Ms. McKnight's young son.

18. Upon entry, defendant police officers, who were in plain clothes or tactical gear and included numerous officers with helmets, shields, and firearms drawn, entered Plaintiffs' apartment in force.

19. Before and as the officers entered, Plaintiffs repeatedly told them that they had the wrong apartment.

20. Ms. McKnight repeatedly asked to see a search warrant and informed the officers that they had the wrong door. Rather than show the warrant, the officers told her in substance to get out of the way, to sit down, and that they would "get to that later."

21. Despite Plaintiffs' immediate statements that the officers were in the wrong apartment, defendant police officers took no steps to verify that they were in the proper unit before seizing Plaintiffs and searching the residence.

22. Defendant police officers handcuffed Ms. McKnight and Mr. Spraus inside the apartment while their child was present and visibly frightened.

23. Ms. McKnight was placed in metal handcuffs behind her back and forced to remain seated while a female officer stood over her.

24. Mr. Spraus was likewise handcuffed and detained within the apartment.

25. Plaintiffs were under arrest, but not charged with any crime, and had done nothing unlawful.

26. Defendant police officers searched Plaintiffs' apartment room by room while Plaintiffs remained handcuffed and detained.

27. During the search, the officers took Ms. McKnight's phone from her hand.

28. The officers also ordered Ms. McKnight's son to sit down, attempted to control his movements, and caused him visible fear and distress during the raid.

29. Plaintiffs repeatedly told the officers that the person they were seeking did not live in their apartment and that the officers had the wrong unit.

30. Upon information and belief, the officers had sufficient information available to determine, both before and immediately upon entry, that Plaintiffs' apartment was not the apartment of the person sought under the warrant.

31. Nevertheless, defendant police officers continued the seizure and search of Plaintiffs and their residence.

32. The officers kept Plaintiffs in handcuffs for a substantial period while they continued their activity elsewhere on the premises.

33. Ms. McKnight and Mr. Spraus remained handcuffed until the officers finally left.

34. Defendant police officers never arrested either Plaintiff, never transported either Plaintiff to a precinct, and never charged either Plaintiff with any offense.

35. At the end of the incident, officers asked Plaintiffs to sign paperwork stating in substance that the warrant had been shown to them. Plaintiffs were not meaningfully afforded an opportunity to review the document before signing, and the officers did not leave a copy of the warrant with them.

36. Upon information and belief, the officers' entry into and search of Plaintiffs' apartment, and the detention and handcuffing of Plaintiffs, were not authorized by any valid warrant as to Plaintiffs' specific apartment and were otherwise unlawful.

37. Upon information and belief, the officers failed to reasonably verify the target apartment before forcibly entering Plaintiffs' home, despite readily available information showing that Plaintiffs were not the occupants sought and that the target individual was associated with another unit.

38. The conduct by defendants caused Plaintiffs to suffer loss of liberty, emotional and psychological pain, anxiety, humiliation, embarrassment, and the deprivation of their federal and state constitutional rights, and damage to property.

39. As a result of the incident, Ms. McKnight became fearful in her own home, has difficulty sleeping, and experiences anxiety and distress when hearing noise or commotion near the gate or residence.

40. As a result of the incident, Mr. Spraus has experienced stress, panic, hypervigilance, and trauma-related distress.

**PLAINTIFFS' FEDERAL CLAIMS AGAINST DEFENDANT POLICE OFFICERS**

41. Plaintiffs re-allege and incorporate by reference the allegations set forth above.

42. In committing the acts and omissions complained of herein, defendant police officers acted under color of state law to deprive Plaintiffs of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

43. Defendant police officers unlawfully entered Plaintiffs' home, unlawfully seized Plaintiffs, and unlawfully detained Plaintiffs without lawful justification.

44. Defendant police officers handcuffed and detained Plaintiffs without probable cause, reasonable suspicion sufficient to justify the manner and duration of the seizure, or other lawful basis.

45. The search of Plaintiffs' apartment and the detention of Plaintiffs were unreasonable and unconstitutional.

46. The conduct by defendants was a direct and proximate cause of Plaintiffs' unlawful search, unlawful seizure, false arrest, false imprisonment, and unlawful detention, all in violation of 42 U.S.C. § 1983.

**PLAINTIFFS' FEDERAL CLAIMS AGAINST THE CITY OF NEW YORK**

47. Plaintiffs re-allege and incorporate by reference the allegations set forth above.

48. The City of New York directly caused the constitutional violations suffered by Plaintiffs.

49. Upon information and belief, the City of New York failed to properly train, supervise, and discipline NYPD officers concerning the execution of search warrants in multi-unit dwellings, the obligation to verify the correct target premises, and the constitutional limits on handcuffing and detaining non-target occupants during warrant execution.

50. The aforesaid conduct by the City of New York violated Plaintiffs' rights under 42 U.S.C. § 1983 and the United States Constitution.

## PLAINTIFFS' STATE LAW CLAIMS AGAINST DEFENDANT POLICE OFFICERS

51. Plaintiffs re-allege and incorporate by reference the allegations set forth above.

52. The conduct by defendant police officers amounted to false arrest, false imprisonment, trespass, and negligence in violation of New York State law.

## PLAINTIFFS' STATE LAW CLAIMS AGAINST THE CITY OF NEW YORK

53. Plaintiffs re-allege and incorporate by reference the allegations set forth above.

54. Because defendant police officers were acting within the scope of their employment as members of the NYPD during the incident in question, the City of New York is vicariously liable for the violations of rights and torts set forth herein, including but not limited to false arrest, false imprisonment, trespass, and negligence.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand the following relief jointly and severally against all defendants:

a. Compensatory damages in an amount to be determined by a jury at trial;

b. Punitive damages in an amount to be determined by a jury at trial;

c. The convening and empanelling of a jury to consider the merits of the claims herein;

d. Costs, interest and attorneys' fees; and

e. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
April 17, 2026

AARON M. RUBIN
Attorney for Plaintiffs

_________/s___________
BY: Aaron M. Rubin, Esq.

99 Wall Street Suite 1130
New York, New York 10016

(212) 725-4600

arubin@amresquire.com